UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
AGROTIKI VIOMICHANIA GALAKTOS :
IPIROU DODONI A.E.,
: 14 Civ. 9179 (LAK)
              Plaintiff,
:
  - against –
:
FANTIS FOODS, INC., JOHN DOES 1-10,
and XYZ BUSINESSES, :

            Defendants. :
------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

SMITH, GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
(212) 907-9700

*Attorneys for Plaintiff*
*Agrotiki Viomichania Galaktos Ipirou Dodoni A.E.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

    POINT I        DEFENDANT'S MOTION TO DISMISS THE ACTION BASED UPON THE FORUM-SELECTION CLAUSE SHOULD BE DENIED ............................................................... 3

        A.    The Legal Standard. ......................................................................... 3

        B.    Dodoni's claims are not subject to the forum selection clause. .................. 4

        C.    Dodoni cannot obtain relief in a Greek court ............................................ 9

    POINT II       DODONI HAS STATED A VALID CLAIM UNDER NEW YORK GENERAL BUSINESS LAW § 349 ............................................ 11

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A.*
    572 F.3d 86 (2d Cir. 2009) .................................................................................... 4, 5, 6

*Atlantic Container Line AB v. Volvo Car Corporation*
    No. 14-cv-1811 (CM), 2014 WL 4730152 (S.D.N.Y.) (September 22, 2014) .................... 4

*Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas*
    134 S.Ct. 568, 187 L.Ed.2d 487 (2013) ........................................................................ 4, 9

*Bel Canto Design, Ltd. v. MSS Hifi, Inc.*
    837 F.Supp.2d 208 (S.D.N.Y. 2011) .......................................................................... 12, 13

*Cruz v. FSDirectDealer LLC (FXDD)*
    720 F.3d 115 (2d Cir. 2013) ............................................................................................ 12

*Goshen v. Mutual Life Insurance Company of New York*
    98 N.Y.2d 314 (2002) ...................................................................................................... 12

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*
    277 F.Supp.2d 269 (S.D.N.Y. 2003) ............................................................................... 14

*Helios International S.A.R.L. v. Cantamessa USA, Inc.*
    No. 12 Civ. 8205 (RS), 2013 WL 3943267 *13 (S.D.N.Y.) (July 31, 2013) .................... 15

*In re Houbigant, Inc.*
    914 F.Supp. 964 (S.D.N.Y. 1995) ................................................................................... 15

*Japan Press Service, Inc. v. Japan Press Service, Inc.*
    No. 11 CV 5875 (SJF), 2013 WL 80181 (E.D.N.Y. January 2, 2013) .............................. 7

*Krasnyi Oktyabr, Inc. v. Trilini Imports,* No. CV-05-5359 (DT)
    2007 WL 1017620 *11 (E.D.N.Y.) (March 30, 2007) ...................................................... 15

*Leider v. Ralfe*
    387 F.Supp.2d 283 (S.D.N.Y. 2005) ............................................................................... 13

*Phillips v. Audio Active Ltd.*
    494 F.3d 378 (2d Cir. 2007) ..................................................................................... passim

*V & S Vin & Spirit Aktiebolag v. Hanson*
    146 F.Supp.2d 796 (E.D. Va. 2001) .................................................................................. 9

*Ward v. TheLadders.com*
    *Inc.*, 3 F.Supp.3d 151 (S.D.N.Y. 2014) .......................................................................... 12

**Statutes**

15 U.S.C. § 1114 ........................................................................................................... 2

15 U.S.C. § 1125 ........................................................................................................... 2

28 U.S.C. § 1404(a) ...................................................................................................... 2

New York General Business Law § 349 ............................................................... passim

New York General Business Law § 360-1 ................................................................... 2

Plaintiff Agrotiki Viomichania Galaktos Ipirou Dodoni A.E. ("**Dodoni**"), by and through its attorneys, Smith, Gambrell & Russell, LLP, respectfully submits this Memorandum of Law in opposition to the motion to dismiss this action filed by defendant Fantis Foods, Inc. ("**Defendant**").

## PRELIMINARY STATEMENT

Defendant's motion filed by defendant Fantis Foods, Inc. ("**Defendant**"), to dismiss this action is based on the flawed premise that Dodoni brought this action to enforce contractually based trademark ownership rights. To the contrary, Dodoni's claims flow not from rights granted by the parties' October 18, 2011 contract ("**Contract**"), as suggested by Defendant, but from Defendant's counterfeiting and infringement of Dodoni's federally registered trademarks. As such, Dodoni's claims are *not* subject to the forum selection clause in the Contract.

Further, because of the territorial nature of trademark rights, a United States action is necessary to determine Dodoni's rights from its U.S. registered trademarks and whether Defendant infringed those rights. Dodoni's claims are all based in United States law, and United States federal courts are indisputably better acquainted with these laws than Greek courts. Dodoni also should not be in a position of being unable to enforce a Greek court's judgment in the United States.

Dodoni has filed a First Amended Complaint ("**Amended Complaint**") in which it amplified its allegations regarding a New York nexus with Defendant's illicit counterfeiting activities. The Amended Complaint also sets forth in greater detail the specific and substantial injury to the public interest implicated by Defendant's actions. Dodoni clearly satisfies the

pleading requirements of General Business Law § 349. Defendant's motion should therefore be denied in all respects.[1]

## BACKGROUND

Dodoni commenced this action on November 18, 2014, seeking injunctive and monetary relief against Defendants for: (i) federal trademark counterfeiting under 15 U.S.C. § 1114; (ii) federal trademark infringement under 15 U.S.C. § 1114; (iii) federal false description and false designation of origin in commerce under 15 U.S.C. § 1125; (iv) New York injury to business reputation under New York General Business Law § 360-l; (v) deceptive trade practices under New York General Business Law § 349; (vi) unfair competition under the common law of the State of New York and elsewhere; and (vii) unjust enrichment under the common law of the State of New York and elsewhere.

This Court granted Dodoni's application for an *ex parte* seizure order and temporary restraining order. The seizure was executed on November 25, 2014, at which time Dodoni and its investigators obtained counterfeit labels bearing the Dodoni trademarks, documents and computers, and photographs of products and Defendant's premises. Some of the seized data and photographs are submitted in connection with this motion.

From the start Defendant has desperately tried to take this case away from this Court. First it filed a Motion to Transfer pursuant to 28 U.S.C. § 1404(a) on December 18, 2014. The parties agreed to a briefing schedule for that motion so it is not yet fully briefed but then Defendant filed this motion to dismiss six days later on December 24, 2014. The first motion was brought under the doctrine of *forum non conveniens* and/or Federal Rule of Civil Procedure 12(b)(6). As will be discussed, the proper mechanism for filing a motion to dismiss is 28 U.S.C.

---

[1] Dodoni has omitted as unnecessary its claim for unjust enrichment from the Amended Complaint. Thus, that branch of Defendant's motion is moot.

2

§ 1404(a). Thus, Defendant has effectively filed two motions under the same statutory predicate in the same week.

There is another action pending between the parties in the District of New Jersey (Case No. 2:14-cv-4075). There, the claims asserted by Defendant against Dodoni are all based on the parties' contractual relationship, and Dodoni has requested dismissal based on the forum selection clause in the Contract. Defendant opposes the application of the forum selection clause in the New Jersey case. Yet it takes the exact opposite and contradictory position here and urges dismissal based on the clause, despite its assertion that both cases involve contract claims. On the other hand, Dodoni has taken consistent positions on the forum selection clause; where contract claims are involved (New Jersey) Dodoni advocates the application on the clause, and where the claims are based on extra-contractual rights and activities (New York) the clause does not apply. Defendant's characterization of Dodoni's position on this matter, perhaps to detract attention from its own inconsistencies, is absolutely incorrect.

## ARGUMENT

### POINT I

### DEFENDANT'S MOTION TO DISMISS THE ACTION BASED UPON THE FORUM-SELECTION CLAUSE SHOULD BE DENIED

A.  **The Legal Standard.**

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas,* 134 S.Ct. 568,

580, 187 L.Ed.2d 487 (2013) ("*Atlantic Marine*"). Further, "the appropriate provision to enforce the forum-selection clause in this case" is 28 U.S.C. 1404(a).[2] *Id.*, at 579.

"To determine whether a forum-selection clause is enforceable, the Court must consider, first, whether the clause is valid and second, whether the public interest factors nevertheless counsel against its enforcement." *Atlantic Container Line AB v. Volvo Car Corporation*, No. 14-cv-1811 (CM), 2014 WL 4730152 (S.D.N.Y.) (September 22, 2014), *citing Atlantic Marine*, 134 S.Ct. at 581-82.

> In general, to obtain dismissal based on a forum selection clause the party seeking enforcement of the clause must demonstrate that: (1) the clause was reasonably communicated to the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause . . . After the party seeking enforcement has established these three conditions, the burden shifts to the party resisting enforcement to rebut the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009) (internal quotations and citations omitted), *citing Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).[3]

**B.   Dodoni's claims are not subject to the forum selection clause.**

Defendant seeks dismissal of this action by invoking Paragraph 10.2 of the Contract, which states that "[t]he Courts in Ioannina shall have exclusive jurisdiction over any dispute

---

[2] In *Atlantic Marine* the Court stated clearly that it would not consider an *amicus* argument "that a defendant in a breach-of-contract action should be able to obtain dismissal under Rule 12(b)(6) if the plaintiff files suit in a district other than the one specified in a valid forum-selection clause." *Id.* at 580.

[3] Although the forum selection clause also provides for the application of Greek law to disputes under the Contract, Defendant did not invoke Greek law in analyzing the enforceability of the forum selection clause, but instead applied federal precedent. Dodoni does not object to the application of "general contract law principles and federal precedent to discern the meaning and scope of the forum clause" and the Court should therefore apply such law to this motion. *Phillips, 494 F.3d at 386* (("[T]he parties' briefs assume that New York law controls this issue, and such implied consent ... is sufficient to establish choice of law.") (internal citations and quotations omitted).

arising from the enforcement and operation of this agreement (e.g. for filing and hearing any type of action . . .). (Kaplan Decl., Ex. B.) Defendant's position, however, is grounded in the flawed assumption that Dodoni brought this action to enforce contractually based trademark ownership rights. To the contrary, Dodoni's claims do not sound in contract, but in (a) trademark counterfeiting, infringement, and false description and designation of origin in commerce under United States trademark laws, and (b) injury to business reputation, deceptive trade practices, common law trademark infringement and unfair competition, based on New York State statutory and common law. All of these claims flow from Defendant's counterfeiting and infringement of Dodoni's trademarks, not from the Contract.

Dodoni does not dispute that the forum selection clause was reasonably communicated and that the clause is mandatory. Rather, Defendant fails to sustain its burden with respect to the third prong of the analysis because it has not shown that Dodoni's claims are subject to the forum selection clause.

In *Altvater Gessler*, 572 F.3d 86, the Second Circuit considered the enforceability of forum selection clauses in licensing agreements which specified venue in Poland for all claims "resulting from" those agreements. The Court held that because plaintiff's claims "do not sound in contract and are not based on rights originating from the licensing agreements[,]" the forum selection clauses did not cover plaintiff's claims for unfair competition, trademark dilution, trademark infringement, deceptive trade practices and unjust enrichment. *Id.* Notably, the Court observed that plaintiff's claims "may begin in court without any reference to the contract." *Id.*, citing *Philips v. Audio Active, Ltd.,* 494 F.3d at 392.

The *Altvater Gessler* court relied heavily on, and found *Phillips* to be controlling. The court discussed *Phillips* as follows:

5

> In *Phillips,* the district court had dismissed the plaintiff's copyright claims based on a determination that "any dispute concerning the defendant's rights to exploit [plaintiff's] music was primarily contractual because the defendants had acquired possession of the music legitimately under the contract." *Id.* at 383. After interpreting language in a forum selection clause stating that it governed "any legal proceedings that may arise out of" the agreement, this Court rejected the district court's analysis. *Id.* at 382. The *Phillips* Court explained that it did "not understand the words 'arise out of' as encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to,' 'be associated with,' 'or 'arise in connection with' the contract." *Id.* at 389 (citing Webster's Third New International Dictionary 117 (1981)). Rather, it saw "no reason to presume the parties meant anything other than the dictionary definition of the term: to originate from a specified source." *Id.* at 390.
>
> Drawing on this definition, the *Phillips* Court went on to conclude that plaintiff's rights did not "originate" from the recording contract: "[Plaintiff] does not rely on the recording contract to establish his ownership of the relevant copyrights, but on his authorship of the work.... [His] copyright claims do not arise out of the contract because [he] has asserted no rights or duties under that contract...." *91 Id. at 390–91. Further, because the contract was "only relevant as a defense," the court could not say that plaintiff's copyright claims "originate from, and therefore 'arise out of' the contract." Id. at 391.

*Altvater Gessler*, 572 F.3d at 90-91.

*Phillips*[4] and *Altvater Gessler* control here, where the forum selection clause in the Contract covers "any dispute arising from the enforcement and operation of this agreement."[5] As set forth the Complaint, Dodoni's trademark claims originate from its federal trademark registrations and its fifty year history of promoting, marketing, advertising, distributing and

---

[4] Notably, the *Phillips* Court dismissed plaintiff's contract claim as subject to the forum selection clause, but retained jurisdiction of its federal copyright claims and state law claims. *Phillips*, 494 F.3d at 393.

[5] It was inconsequential that the *Altveter Gessler* forum selection clauses used the language "resulting from" instead of the language of the Phillips clause which read "arising out of." According to the *Altveter Gessler* Court, "the two phrases have very similar meanings" and "Webster's Third New International Dictionary uses the term 'arise' when defining 'result.'" Id. at 91.

selling its dairy products in connection with its trademarks. Complaint, para. 12-14. Significantly, the Complaint references Dodoni's word mark and logos which were registered as United States federal trademarks on the Principal Trademark Register as early as 1990, 1991 and 1994. *Id.*, paras. 15-17. These dates all precede the date of the earliest contact between Dodoni and Defendant by five to ten years.

Defendant correctly notes that Dodoni "deliberately omits referencing [the Contract] in the Complaint." Memorandum of Law, p. 1. The reason is plain – the claims asserted in the Complaint are independent of, and do not arise from the Contract. The reference was deliberately "omitted" because the existence of the contract is irrelevant; Dodini's claims "may begin in court without any reference to the contract." *Phillips*, 494 F.3d at 392. Similarly, just as in *Phillips* and *Altvater Gessler*, because the Contract is "only relevant as a defense," it cannot be concluded that Dodoni's trademark claims "originate from, and therefore 'arise out of' the contract." Id. at 391.

In *Japan Press Service, Inc. v. Japan Press Service, Inc., No.* 11 CV 5875 (SJF), 2013 WL 80181 (E.D.N.Y. January 2, 2013), defendant similarly moved to dismiss plaintiff's Lanham Act claims based on a forum selection clause. The court applied the *Phillips* test and found that plaintiff's rights did not originate from the parties' contracts because plaintiff did not rely on the contracts to establish its ownership of the trademarks. "Rather, plaintiff bases its ownership rights to the relevant trademarks upon its registration of the marks …and/or continued use of the marks … In other words, plaintiff's claims do not arise out of the [contracts] because it has asserted no rights or duties under those Contracts." *Id.*, at *11.[6]

---

[6] In *Japan Press Service, Inc.*, plaintiff registered its marks after the date of the contracts between the parties, but the court still found the claims to be based in the registrations. Here, Dodoni's marks were registered in the early 1990s - years before the parties entered into the Contract – thereby strengthening the argument that the trademark infringement claims do not originate from the contract.

7

Defendant makes a misguided effort to distinguish this case by referencing Paragraphs 8.1 and 8.2 of the Contract. These paragraphs include a typical recitation of ownership of, *inter alia,* all trademarks and any copyright concerning Dodoni's products. Although Defendant asserts that Dodoni is attempting to "enforce these ownership rights" in this case, it conveniently omits Paragraph 8.3 which provides:

> **8.3** - Throughout the term of this agreement, [Defendant] is required to notify [Dodoni] promptly of any infringement of its copyrights and take, -*whereas [Dodoni] incurs the expenses* – all necessary steps to address such infringements.

When read in context, it is clear that Paragraphs 8.1 and 8.2 do not grant Dodoni the trademark rights it now seeks to enforce in this action. Rather, those paragraphs are merely a recital of Dodoni's rights which it had acquired prior to and independent of the Contract. Moreover, the reason for reciting those rights apparently was to lay the predicate for Defendant's Paragraph 8.3 obligation to notify Dodoni of any infringement and take steps to address it. Nothing in Paragraph 8 changes the simple fact that Dodoni's claims arise out of non-contractual rights which are not subject to the forum selection clause.

Finally, Defendant places much weight on Dodoni's statement in the New Jersey action that the clause covers "all claims arising out of the contractual relationship – including tort claims." Memorandum of Law, p. 5. Apparently Defendant contends that Dodoni's trademark infringement and counterfeiting claims are tort claims and therefore are subject to the forum selection clause. But this argument is also flawed. Regardless of the label ascribed to the claims, they indisputably originate not from the Contract, but from Dodoni's statutory and common law trademark rights. As such, they are not subject to the forum selection clause and Fantis' motion must be denied.

8

SGR/12670621.2

## C. Dodoni cannot obtain relief in a Greek court.

When considering a motion to enforce a forum-selection clause under Section 1404(a), the court may consider public interest factors such as, *inter alia,* "the local interest in having localized controversies decided at home." *Atlantic Marine,* 134 S.Ct at 582, n. 6. Also, according to *Phillips,* if "the party seeking enforcement has established [the initial] three conditions, the burden shifts to the party resisting enforcement to rebut the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Phillips,* 494 F.3d at 384. Dodoni has shown above that the forum-selection clause is not applicable as it relates to Defendant's motion to dismiss the claims asserted in this action. Nevertheless, to the extent the Court finds the burden has shifted to Dodoni, public interest considerations compel a finding that enforcement of the clause would be unreasonable or unjust.

*V & S Vin & Spirit Aktiebolag v. Hanson,* 146 F.Supp.2d 796 (E.D. Va. 2001), is instructive. Plaintiff was a Swedish producer of vodka sold under the "Absolut" trademark that sued an Australian company and asserted several claims under the Lanham Act including trademark infringement, unfair competition, trademark dilution and cybersquatting. Plaintiff also asserted claims for unfair business practices and unfair competition in violation of Virginia statutes and common law. In denying defendant's motion to dismiss under the doctrine of *forum non conveniens,* the court found that several public factors weighed in favor of the court retaining jurisdiction. Specifically, because plaintiff had asserted claims based only on United States federal and state law, the court noted that it was "well-acquainted with the laws at issue" and chose not to defer the case to an Australian court. *V & S,* 146 F.Supp.2d at 802. "This was particularly relevant because trademark rights are territorial and exist according to the terms of each country's laws." *Id.* The court also observed that plaintiff could "only obtain relief under

SGR/12670621.2

the specific statutes at issue – the Lanham Act and the ACPA – in a U.S. court[,]"[7] and that "[p]laintiff might face difficulties enforcing the Australian court's judgment in the United States; such difficulties would undercut the value of Plaintiff's U.S. trademark rights in the famous ABSOLUT mark." *Id.*

Finally, the court rejected defendant's motion to dismiss the case in favor of a first-filed action pending in the United Kingdom on the ground that

> trademark rights are inherently territorial. They therefore are properly adjudicated under their creator's laws. A favorable decision by the United Kingdom court will not necessarily protect Plaintiff's United States trademark rights, because of the basic concept of territoriality in trademark law. As the Fifth Circuit remarked, "trademark rights exist in each country solely according to that country's statutory scheme." … Thus, an action in a United States court is necessary to determine Plaintiff's United States trademark rights to the ABSOLUT mark and whether Defendants have infringed those rights [,and the United Kingdom action would not accomplish that goal].

*Id.,* at 803 (internal citation omitted).

These principles also apply to Defendant's motion to dismiss. Dodoni's claims are all based on United States law, and United States federal courts are indisputably better acquainted with these laws than Greek courts. Also, because of the territorial nature of trademark rights, a United States action is necessary to determine Dodoni's rights to its trademarks and whether Defendant infringed those rights. Finally, Dodoni should not be in a position of being unable to enforce a Greek court's judgment in the United States.

---

[7] The leading treatise on trademark law likewise notes that "a plaintiff wishing to file suit for violation of a provision of the Lanham Act has a choice to sue on the claim in either federal or state court." 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 32:1 at 32-11 (4th ed. 2014).

10

## POINT II

## DODONI HAS STATED A VALID CLAIM UNDER
## NEW YORK GENERAL BUSINESS LAW § 349

Defendant contends that Dodoni's claim under New York General Business Law § 349 ("**GBL § 349**") should be dismissed because Dodoni (a) did not allege that Fantis made any deceptive sales from New York or to New York residents, and (b) alleged only harm to its business and not to the consuming public. Both of Defendant's contentions are without merit.

Before Defendant filed this motion, Dodoni informed Defendant that there was evidence of a New York nexus. In correspondence to Defendant's counsel immediately following the parties' court appearance on December 18, 2014, Dodoni's attorneys informed Defendant's counsel unequivocally that Fantis sales records "reveals sales this year to Grace's Marketplace, located on the Upper Eastside of Manhattan and to the Greek Orthodox Church of the Hamptons, located in Southampton, New York." A copy of that letter is appended as Exhibit A to the accompanying Declaration of John G. McCarthy, dated January 7, 2015 ("**McCarthy Dec.**") Also attached to the McCarthy Dec. are: (i) a print-out of sales of three-pound containers provided by Defendant's Vice-President during the seizure (Exhibit B), and (ii) accounts receivable records seized from Defendant showing 97 Fantis customers with New York area codes (Exhibit C).[8]

Despite Dodoni's admonition that Defendant be guided according to these facts, Defendant obstinately proceeded with its motion to dismiss based, in part, on the lack of an allegation of deceptive sales to New York residents. Plainly, Defendant should not have imposed the burden of having to address this part of the motion on the Court or Dodoni.

---

[8] Dodoni intends to determine through discovery if any of these 97 customers were sold counterfeit or infringing product by Defendant.

In any event, for clarity and to conform to the evidence obtained from Defendant, Dodoni added the following allegations in its Amended Complaint:

> 39. Upon information and belief, Defendants have offered the accused product for sale in New York and within this District and have sold the accused product to customers in New York and within this District.
>
> 40. Upon information and belief, customers within New York and this District have been deceived by purchasing the accused product from Defendants.
>
> 57. The acts of Defendants complained of herein are directed at New York consumers and are deceptive and/or materially misleading to such consumers.

McCarthy Dec., Exhibit "D."

Thus, the Amended Complaint alleges a sufficient nexus between Defendant's illicit sale of counterfeit cheese and New York to fall within the territorial reach of GBL § 349. It is well settled that to satisfy the territorial requirement of GBL § 349, the deceptive transaction complained of must have occurred in New York. *See, e.g., Cruz v. FSDirectDealer, LLC (FXDD)* 720 F.3d 115, 122 (2d Cir. 2013) ("The New York Court of Appeals in *Goshen v. Mutual Life Insurance Company of New York*, [98 N.Y.2d 314 (2002)] appears to have interpreted the limiting phrase 'in this state' in sections 349(a) and 350 to require that the transactions in which the consumer is deceived . . . occur in New York."); *Bel Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F.Supp.2d 208, 228 (S.D.N.Y. 2011) ("New York consumer laws govern *transactions* that take place in New York, not just transactions that involve New York residents."); *Ward v. TheLadders.com, Inc.*, 3 F.Supp.3d 151, 167-68 (S.D.N.Y. 2014) ("In *Cruz*, the Second Circuit Court of Appeals held that this territorial test is satisfied if the deceptive transactions occurred in New York, thus allowing out of state plaintiffs to sue under the statute.").

12

Further, given the multi-state and even international scope of commercial activity in the modern era, it is not required that the *entirety* of the conduct at issue occurs in New York; all that is required is that "at least some part of the underlying unlawful transaction . . . must be completed [in New York]." *Bel Canto Design, Ltd.*, 837 F.Supp.2d at 228; *see also Leider v. Ralfe*, 387 F.Supp.2d 283, 294 (S.D.N.Y. 2005) ("[I]t is simply impossible – nor is it required – for the *entirety* of De Beers' conduct to occur in New York, given the extent of the alleged misconduct and the international scope of the diamond industry.")

In *Leider v. Ralfe*, the Court held that the territorial requirement for GBL § 349 may be satisfied when the defendant's alleged misconduct has some tangible tie to New York. *Leider*, 387 F.Supp.2d at 294 ("[U]se of a telemarketing site and even receipt of Internet orders physically within New York State appear to form a New York locus for a transaction covered by the New York consumer protection statutes"); see *also Bel Canto Design, Ltd.*, 837 F.Supp.2d at 228.

Here, the allegations of the Amended Complaint easily satisfy the territorial requirement to state a valid claim under GBL § 349. In particular, Dodoni has alleged that Defendant has offered the counterfeit product for sale *in New York*, sold it to customers *in New York*, and that customers *in New York* have been deceived by purchasing Defendant's product. Accordingly, Dodoni has pleaded a sufficient New York nexus with respect to Defendant's deceptive conduct, and has thus stated a valid claim under GBL § 349.

Similarly, Defendant's assertion about the lack of alleged harm to the public is unfounded. In its *original* Complaint, Dodoni alleged public harm as follows:

> 32. Defendants' conduct is likely to cause confusion in the marketplace as to the source of the accused goods, deceive the public, and harm the DODONI Marks.

13

> 33. Defendants' conduct may also cause harm to consumers who have food allergies and physical conditions, such as lactose intolerance, and who purchase the deceptively labeled counterfeit product believing it to be made exclusively from sheep's milk, as labeled, when it is made instead from cow's milk. Upon information and belief, Defendants have mislabeled the ingredients of the counterfeit Dodoni Feta cheese with callous indifference to public health and safety.

Standing alone these allegations adequately allege harm to the public interest. But in its Amended Complaint, Dodoni amplifies these allegations based on information obtained during the seizure, as follows:

> 35. Upon information and belief, the conditions in the facility where Defendants packaged the counterfeit cheese and the methods used by Defendants are unsanitary and pose a public health risk.

This allegation is based on conditions observed at Defendant's facility where the seizure occurred, recorded in photographs taken by Dodoni's investigators. Copies of some of these photographs are annexed to the McCarthy Dec. as Exhibit E.

Defendant cites *Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 277 F.Supp.2d 269, 273 (S.D.N.Y. 2003), for the proposition that claims under GBL § 349 are "routinely reject[ed] … where a commercial claimant does not adequately allege harm to the public interest." Unlike the claims asserted in this case, however, *Gucci* involved a counterclaim brought under GBL § 349 where the gravamen was business harm in the form of lost profits and goodwill regarding apparel products. Also, Judge Sweet recognized that a cause of action under GBL § 349 will be sustained if it "affects the public interest in New York[,] … [and] [i]njury or harm that satisfy this standard include potential danger to the public health or safety." *Id.,* at 273.

For example, in *In re Houbigant, Inc.*, 914 F.Supp. 964 (S.D.N.Y. 1995), the court found that plaintiff's GBL § 349 claim survived a motion to dismiss where the complaint alleged that defendants "were part of an unlawful scheme to export and sell counterfeit [fragrances and toiletries] with the intent to cause confusion and mistake, to deceive customers as to the source and origin of the products." (internal quotes omitted). *See also, Helios International S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 Civ. 8205 (RWS), 2013 WL 3943267 *13 (S.D.N.Y. July 31, 2013) (Sweet, D.J.) (allegations that "Defendants conspired to deceive American consumers with counterfeit goods ... sufficient to state a claim under" GBL §349); *Krasnyi Oktyabr, Inc. v. Trilini Imports*, No. CV-05-5359 (DT), 2007 WL 1017620 *11 (E.D.N.Y.) (March 30, 2007) (GBL § 349 claim sustained where inference of consumer harm was established by allegations "that defendants do not comply with quality control standards prescribed by the trademark owner").

There is no doubt that this case is more than your garden variety trademark infringement action. Rather, Dodoni has alleged "specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution." *Helios International S.A.R.L. v. Cantamessa USA, Inc.*, at *12. Defendant's lack of quality control standards has resulted in cheese which contains different ingredients than genuine Dodoni feta cheese, and therefore poses a risk to the health of the consuming public who may be deceived and misled as to its source and origin. Dodoni has alleged injury or harm to consumers as required by GBL § 349.

## CONCLUSION

Defendant's desperate attempt to take this case away from this Court must be rejected. Clearly Dodoni's claims arise from its trademark rights which were acquired prior to and independent from the Contract. The forum selection clause therefore does not apply to the

claims in this action. Moreover, the public interest factors weigh heavily in favor of denying the dismissal motion. Dodoni cannot litigate its Lanham Act claims in Greece as a result of the territorial nature of its U.S. trademark rights.

There are no deficiencies in Dodoni's claims under GBL § 349. Dodoni has adequately pled a New York nexus to Defendant's illicit counterfeiting activities, and has pled adequately harm to the public health and safety.

For all of these reasons, Defendant's motion should be denied in its entirety.

Dated: New York, New York
January 7, 2015

SMITH, GAMBRELL & RUSSELL, LLP

By: _____
Marsha G. Ajhar
John G. McCarthy
Peter G. Goodman
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Phone: (212) 907-9700
Fax: (212) 907-9865
majhar@sgrlaw.com
jmccarthy@sgrlaw.com
pgoodman@sgrlaw.com

*Attorneys for Plaintiff*
*Agrotiki Viomichania Galaktos*
*Ipirou Dodoni A.E.*