UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
AGROTIKI VIOMICHANIA GALAKTOS IPIROU
DODONI A.E.,

                            Plaintiff,


             -against-                                    14-cv-9179 (LAK)


FANTIS FOODS, INC., et al.,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x



**MEMORANDUM OPINION**


             Appearances:


                     Marsha G. Ajhar
                     John G. McCarthy
                     Peter G. Goodman
                     SMITH, GAMBRELL & RUSSELL, LLP
                     *Attorneys for Plaintiff*


                     Michael A. Kaplan
                     LOWENSTEIN SANDLER LLP
                     *Attorneys for Defendants*



LEWIS A. KAPLAN, *District Judge.*

             This is a trademark counterfeiting action brought by Agrotiki Viomichania Galaktos

Ipirou Dodoni A.E. ("Dodoni"), a Greek manufacturer of feta cheese, against Fantis Food, Inc.

("Fantis"), formerly its primary and at times exclusive importer and distributor.  The case arises

against the background of an earlier, pending contract action by Fantis against Dodoni in the District of New Jersey.  This matter now is before the Court on Fantis's motions to (1) dismiss the complaint under the doctrine of *forum non conveniens* or Rule 12(b)(6), essentially on the ground that Dodoni's claims come within a mandatory forum selection clause that requires litigation in Greece under Greek law, or (2) transfer this action to the District of New Jersey pursuant to 28 U.S.C. § 1404(a), largely on the ground that both cases belong in the court seised of the first filed action between the parties.  Relevant also is the fact that Dodoni has moved in the New Jersey case to dismiss Fantis's complaint based on the same forum selection clause.  Thus, the arguments of the parties in this and the New Jersey case are at least in some tension, though each strives mightily to reconcile the arguments it has made to each of the courts concerned.

*Facts*

*The Contracts*

As mentioned, Fantis was Dodoni's principal and usually exclusive U.S. importer and distributor from 1984 to 2013.[1]  The relationship at times was governed by a written contract.  At other times, it allegedly was subject to verbal agreement.[2]  In any event, the parties entered into at least two written contracts, the first on January 31, 2004 (the "2004 Contract") and the second on October 18, 2011 (the "2011 Contract").

---

[1]      Kaplan Cert. [DI 33] Ex. A (Complaint ¶ 4, *Fantis Foods, Inc., v. Dodoni S.A.*, No. 14-cv-4075 (D.N.J. Apr. 28, 2014)) (hereinafter "N.J. Compl.").

[2]      *Id*. ¶ 5.

The 2004 Contract contained this forum selection clause:[3]

> For the resolution of any disputes, should they ensue from the application and operation of this contract, the Courts of the city of Ioannina shall be exclusively the competent courts (i.e. for the filing and hearing of any type of suits, the issuance of payment orders etc.), and the Greek law the applicable law.

The 2011 Contract, which allegedly was retroactive to January 1, 2011, provided:[4]

> The Courts in Ioannina shall have exclusive jurisdiction over any dispute arising from the enforcement and operation of this agreement (*e.g. for filing and hearing any type of action, issuing payment order, etc.*) and the Greek Law shall be applicable.

There is no suggestion in any of the parties' filings that there was a forum selection clause in any other agreement or agreements between the parties.

The 2011 Contract provided as follows:[5]

> **8.1.**-All types of marks, design rights, (*patented or not*), know-how, business trade names, intellectual property rights, and any other related or similar right are owned exclusively by [Dodoni].

> **8.2.**-The trademarks and any copyright of any type, concerning the products of [Dodoni] and their sale in the United States and Canada are the property of [Dodoni] and remain therewith.

> **8.3.**-Throughout the term of this agreement, [Fantis] is required to notify [Dodoni] promptly of any infringement of its copyrights and take, *–whereas [Dodoni] incurs the expenses–* all necessary steps to address such infringements.

---

[3]

Makris Cert. [DI 34] Ex. A ¶ 16(d) (hereinafter "2004 Contract").

[4]

DI 34 Ex. B ¶ 10.2 (emphasis in original) (hereinafter "2011 Contract").

[5]

*Id.* ¶ 8.1-8.3 (emphasis in original).

4

*The Relationship Ends and Dodoni Appoints a New Distributor*

The relationship between the parties in the period 2012 through early 2014 is in some dispute.

Fantis claims that the 2004 Contract expired at the end of 2010, that the parties operated under the 2011 Contract in 2011, that the 2011 Contract expired at the end of that year, but that Dodoni continued to sell to it under verbal arrangements until late 2013 or early 2014.[6]  During that post-2011 Contract period, according to Fantis, Dodoni promised to use Fantis as its exclusive importer and distributor of feta cheese in 2014, and that Dodoni then welched on its agreement on or about March 11, 2014, when Dodoni management informed Fantis that it no longer would be Dodoni's feta cheese exclusive importer and distributor and appointed Arthur Schuman, Inc. to that position.[7]

Dodoni's position is somewhat different.  It agrees that the 2004 Contract expired at the end of 2010, that the 2011 Contract expired at the end of 2011, and that it continued selling to Fantis into 2014.[8]  But Dodoni contends that the forum selection provision in the 2011 Contract continued in effect by virtue of paragraph 9.3 of that agreement, which provided[9]:

> If [Dodoni] resumes selling products to [Fantis] following the expiration of this agreement . . . in no event shall be considered as an implied extension of its term.

---

[6]

DI 34 ¶¶ 2-3, 5; N.J. Compl. ¶¶ 4, 6. 10, 36-37.

[7]

N.J. Compl. ¶¶ 10, 36-37.

[8]

Kaplan Decl. [DI 38] Ex. D (Dodoni Reply Mem.  in Support of Mot. to Dismiss Based on the Forum Selection Clause, at 4, *Fantis Foods, Inc., v. Dodoni S.A.*, No. 14-cv-4075 (D.N.J. Aug. 11, 2014)).

[9]

2011 Contract ¶ 9.3 (emphasis in original).

Such thing (*meaning the sale*) may occur exceptionally and following a special request of [Fantis] to cover urgent needs that it has at the ultimate time when a new agreement is signed, if any.   At any rate, though, such sales may be made and the ultimate time they are made may be determined by [Dodoni] in its sole discretion. Finally it is expressly agreed that at such exceptional cases of selling products to [Fantis] after the expiration of the agreement, all terms herein shall continue to apply and [Fantis's] obligations shall be covered by the existing letter of guarantee.

*The New Jersey Action*

Fantis fired the first shot in what now, for the moment, is a two front war.  In April of last year, it sued Dodoni in New Jersey Superior Court for breach of contract, equitable estoppel and fraud.  The first two counts allege generally breach of an "exclusive distribution contract," an apparent reference to the 2014 appointment of Arthur Schuman, Inc.[10]  The fraud and equitable estoppel claims rest essentially on alleged representations regarding the continuation of Fantis as the exclusive distributor.[11]  There is also a claim for breach of an allegedly contractual obligation to provide insurance.[12]

Dodoni removed the action to the District of New Jersey.  It moved on July 3, 2014, to dismiss Fantis' complaint under the forum selection clause in the 2004 Contract or, alternatively, to quash service on the ground that process had not been served in accordance with the Hague

---

[10]    N.J. Compl. ¶¶ 37, 42; *see also id.* ¶ 46.

[11]    *Id.* ¶¶ 49, 58-60.

[12]    *Id.* ¶¶ 54-55.

Convention on the Service Abroad of Judicial and Extra-Judicial Documents.[13]   The parties submitted supplemental briefing on March 9, 2015.

*Discussion*

Dodoni commenced the New York action in November 2014.  The complaint alleges that the defendants (Fantis and various "John Does" and unnamed "businesses" – *i.e.*, Fantis and associates) "are improperly profiting from Dodoni's . . . investment in" its registered trademarks by incorporating them on "counterfeit, infringing Feta cheese packaged in three pound plastic buckets."[14]  Elsewhere it alleges that defendants "have used" reproductions of Dodoni's marks[15] although it does not allege when.  It asserts claims for federal trademark counterfeiting, infringement and false designation of origin as well as various claims under New York law.  So the first issue is whether, as Fantis contends, Dodoni's claims in this action come within a valid forum selection clause requiring it to resort to the specified Greek courts.

As the Second Circuit has held[16]:

> [T]o obtain dismissal based on a forum selection clause[,] the party seeking enforcement of the clause must demonstrate that: (1) the clause was reasonably

---

[13]

Kaplan Cert. [DI 33] Ex. B (Dodoni Mem. in Support of Mot. to Dismiss Based on the Forum Selection Clause or in the Alternative For Failure to Serve Process, *Fantis Foods, Inc., v. Dodoni S.A.*, No. 14-cv-4075 (D.N.J. July 3, 2014)).

[14]

Compl. [DI 7] ¶ 24.

[15]

*Id.* ¶ 39.

[16]

*Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009) (citation omitted) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007)).

7

communicated to the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause. . . . After the party seeking enforcement has established these three conditions, the burden shifts to the party resisting enforcement to rebut the presumption of enforceability by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."

In this instance, the parties agree that the forum selection clause in the 2011 Contract was reasonably communicated to the party resisting enforcement (Dodoni) and that the clause was mandatory.  The points in dispute are whether (1) Dodoni's claims are subject to the forum selection clause and, if so, (2) Dodoni has overcome the presumption of enforceability with a sufficient showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."[17]

Fantis contends that Dodoni's claims in this action – claims for federal trademark counterfeiting, infringement and false designation of origin as well as various related claims under New York law – "aris[e] from the enforcement and operation of this agreement [*i.e.*, the 2011 Contract]" – and therefore come within the forum selection clause of that agreement.[18]  Dodoni counters that its claims "do not sound in contract, but in (a) trademark counterfeiting, infringement, and false description and designation of origin . . . under United States . . . laws," and (b)

---

[17]  *Id*.

[18]  Fantis Mem. in Support of Def. Mot. to Dismiss [DI 37] at 5.

comparable state law theories.[19]  All of its claims, it says, "flow from [Fantis's] counterfeiting and infringement to Dodoni's trademarks, not from the Contract."[20]

*The Infringement and Counterfeiting Claims*

As an initial matter, the fact that Dodoni's claims are framed under federal and state trademark and unfair competition law rather than as contract claims within the meaning of the forum selection clause is of no importance.  As the Second Circuit made abundantly clear in *Phillips v. Audio Active Ltd.*,[21] "it is inappropriate . . . to depend solely on the legal labels used by plaintiff to decide if his case arises out of the contract" in order to determine whether its claims are governed by a forum selection clause.[22]  "Instead, when ascertaining the applicability of a contractual provision to particular claims, we examine the substance of those claims, shorn of their labels."[23]  Moreover, *Phillips* rejected outright the proposition that federal copyright infringement claims "arising under the Copyright Act for jurisdictional purposes cannot also 'arise out of' a contract for purposes of interpreting a forum selection clause."[24]  It necessarily follows that the same is true in determining whether a plaintiff's claims come within the language of a forum selection clause that

---

[19]     Dodoni Mem. in Opp. to Def. Mot. to Dismiss [DI 42] at 5.

[20]     *Id*.

[21]     494 F.3d 378.

[22]     *Id.* at 388.

[23]     *Id.* at 388-89.

[24]     *Id.* at 388.

9

defines its scope by language different from the common "arises out of" formulation.[25]   The

question in each case is the substance of the plaintiff's "claims as they relate to the precise language

of the clause."[26]

        In this case, the forum selection clause relied upon by Fantis is paragraph 10.2 of the

2011 Contract, which states in relevant part that "[t]he Courts in Ioannina shall have exclusive

jurisdiction over any dispute arising from the enforcement and operation of this agreement (*e.g. for

filing and hearing any type of action, issuing payment order, etc.*)."[27]  It contends that Dodoni's

claims "aris[e] from the enforcement and operation of" the 2011 Contract because (1) paragraphs

8.1 and 8.2 provide that Dodoni owns the trademarks used on Dodoni products, thereby making

trademark ownership (which is a prerequisite to Dodoni's infringement claims) a subject of the

contract, and (2) the remaining claims all arose in consequence of the contractual relationship.[28]

Dodoni counters, however, that its federally registered trademarks predate by years the earliest

---

[25]

    *See id.* at 390 (approving approach of *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997)).

[26]

    *Id.* at 389.

[27]

    2011 Contract ¶ 10.2 (emphasis in original).

    It must be noted that the provision specifies also that "Greek Law shall be applicable."  *Id.* Neither party, however, has relied on any distinctive features of Greek law in their briefs. Accordingly, this Court "appl[ies] general contract law principles and federal precedent to discern the meaning and scope of the forum clause."  *Phillips*, 494 F.3d at 386 (applying federal precedent to interpret forum selection clause where parties made little or no reference to English law).

[28]

    *See* DI 37 at 5-7.

contact between the parties, that its claims are independent of the 2011 Contract, and that the contract is relevant, if at all, only as a defense.[29]

Dodoni's position draws support from *Phillips*.  In considering whether the federal copyright infringement claims asserted against the party that sought dismissal came within the forum selection clause there – a clause that applied to claims that arose out of the contract in which it appeared – the Circuit found determinative that the plaintiff did not "rely on the . . . contract to establish his ownership of the relevant copyrights, but on his authorship of the work."[30]  As the plaintiff's claim did "not originate from the . . . contract [and] the proceedings [could] begin in court without any reference to the contract,"[31] the copyright infringement claims there at issue were not governed by the forum selection clause.

Dodoni's position in this case, at least with regard to its federal trademark infringement and counterfeiting claims, is even stronger than that of the copyright holder in *Phillips*, as the language of the forum selection clause in this case is narrower.  The clause here embraces only claims "arising *from the enforcement and operation of* this agreement," whereas that in *Phillips* applied to "legal proceedings that may arise out of" the contract at issue.[32]  The phrase "from the enforcement and operation of" modifies and limits the word "arising."  The presence of that phrase means that not all claims arising from the agreement, whatever precisely that might mean, are

---

29

DI 42 at 6-7.

30

*Phillips*, 494 F.3d at 390.

31

*Id.* at 391-92.

32

*Id.* at 382.

governed by the forum selection clause – only claims arising from the enforcement and operation

of the agreement.  Surely it cannot reasonably be said that the trademark infringement claims arise

from the enforcement of the agreement.  And while Fantis conceivably may claim by way of defense

that whatever it did was contemplated and permitted by the 2011 Contract, such a defense does not

bring the trademark infringement claims within the forum selection clause for the reasons set out

in *Phillips.*

Finally, it bears more than passing mention that the nature and origins of trademarks

have a bearing here:[33]

> A trademark is, essentially, a designation of origin. *Manufacturing Co. v. Trainer*, 101 U.S. 51, 53, 25 L.Ed. 993 (1879). It serves to inform the public of the source of the goods. As the public comes to know a trademark, it relies on the trademark as a sign that the goods sold under that trademark are of the same quality as goods that it has purchased from that source before. *Levitt Corp. v. Levitt*, 593 F.2d 463, 468 (2d Cir.1979); *Marshak v. Green*, 505 F.Supp. 1054, 1061 (S.D.N.Y.1981); *Revlon, Inc. v. La Maur, Inc.*, 157 U.S.P.Q. 602, 605 (TTAB 1968). This public association between goods of a certain quality and a trademark benefits the owner of the trademark by making it easy for consumers to find its product and it benefits consumers by allowing them more easily to find goods of a particular producer that have given them satisfaction in the past. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198, 105 S.Ct. 658, 663, 83 L.Ed.2d 582 (1985).

Accordingly, the "law . . . treat[s] trademarks differently from other species of property."[34]

Typically, "whoever controls the quality of the goods marketed under the trademark is the source

and therefore owns the trademark."[35]   In other words, the property right arises by virtue of the

---

[33]

*Leibowitz v. Elsevier Science Ltd.*, 927 F. Supp. 688, 695-96 (S.D.N.Y. 1996).

[34]

*Id.* at 696.

[35]

*Id.*

control of the quality of the product in connection with which the mark is used in commerce.[36]  And two circumstances demonstrate the essential validity of Dodoni's position that the infringement and counterfeiting claims, at least, originate independently of the contract.

First, Dodoni relies upon its federally registered trademarks, all of which are registered in its name.[37]  Section 7(b) of the Lanham Act[38] provides that its certificates are *prima facie* evidence of the registrant's ownership of the marks.  And while the presumption is rebuttable,[39] Fantis has not sought to rebut the presumption nor has it otherwise suggested in any persuasive way that Dodoni's ownership of the marks is dependent on the 2011 Contract.

And there is still another reason, independent of the federal registrations, why Dodoni's ownership of the marks does not originate in the contract.  As noted, ownership usually is determined by use of the mark in commerce coupled with control of the quality of the goods.  But in manufacturer-distributor situations like this one, the manufacturer – here, Dodoni – is presumed to own the marks absent an agreement to the contrary.[40]  Fantis makes no claim to the contrary.

In all the circumstances, the Court concludes that the federal trademark infringement and counterfeiting claims are not within the scope of the forum selection clause.

---

[36]

*Id.*

[37]

Compl. ¶¶ 15-18.

[38]

15 U.S.C. § 1057(b).

[39]

*E.g., Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 854 (2d Cir. 1988).

[40]

2 J. Thomas McCarthy, McCarthy on Trademarks And Unfair Competition § 16:48, at 16-115 to 16-117 (4th ed. 2013); 5 *id.* § 29:8, at 29-40 to 29-42.

*The False Designation Claim*

We turn now to determine whether Dodoni's claim for false designation arises from the enforcement and operation of the 2011 Contract.  To succeed on a claim for false designation of origin under the Lanham Act, a plaintiff must prove: (1) that the mark is distinctive as to the source of the good, and (2) that there is a likelihood of confusion between the plaintiff's good and the defendant's good.[41]

Neither the distinctiveness of Dodoni's trademarks nor the likelihood of confusion arose from the enforcement or operation of the 2011 Contract.  In fact, Dodoni's claim "may begin in court without any reference to the contract."[42]  And while the 2011 Contract may be "relevant as a defense" to Fantis's allegedly improper conduct, that does not entail that the false designation claim arises from the enforcement or operation of the agreement.[43]  Accordingly, the false designation claim is not governed by the forum selection clause.

*The State Law Claims*

Dodoni asserted also several causes action under state law, all of which are premised on the allegedly improper use of Dodoni's trademarks on Feta cheese packaged in three pound plastic buckets.  For the same reasons discussed above with respect to Dodoni's federal trademark

---

[41] *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001).

[42] *Phillips*, 494 F.3d at 392.

[43] *Id.* at 391.

14

infringement and counterfeiting claims, these state law claims do not arise from the enforcement and operation of the 2011 Contract.[44]

*Conclusion*

For the foregoing reasons, Fantis' motion to dismiss based on the forum selection clause [DI 36] is denied in all respects.

SO ORDERED.

Dated:         March 10, 2015

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[44]

         *See id.* at 392.